LR/2006R00529

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. |
| v. | : | Crim. No. 07- 745 |
| ATILLA KAN | : | 18 U.S.C. § 1349 |

INFORMATION

The defendant having waived in open court prosecution by Indictment, the United States Attorney for the District of New Jersey charges:

THE DEFENDANT AND CO-CONSPIRATORS

1. At all times relevant to this Information:

a. Defendant ATILLA KAN was a resident of Ridgefield, New Jersey and employed as a procurement/operations manager at a Company in Little Ferry, New Jersey ("Company 1"). Among other things, defendant ATILLA KAN sold military spare parts to the United States and Turkish governments on behalf of Company 1.

b. Company 1, a co-conspirator which is not named as a defendant herein, was registered as a United States Department of Defense ("DoD") contractor and supplied parts to the DoD. Company 1 provided various military spare parts to the DoD, including but not limited to, automotive and ground support tractor-trailer parts.

c. Company 2, a co-conspirator which is not named as a defendant herein, was located in Turkey. Company 2

manufactured, imported and exported replacement parts for heavy construction equipment.

   d.  G.D., a co-conspirator who is not named as a defendant herein, was a resident of Teaneck, New Jersey and the owner and operator of Company 1 and Company 2.

DEPARTMENT OF DEFENSE CONTRACTS

   2.  The DoD, through the Defense Supply Center located in Colombus, Ohio ("DSCC"), contracted with private companies ("contractors") to supply various items, including but not limited to, military spare parts.  The DSCC electronically requested and received quotes from contractors for specific items needed by the DoD.

   3.  The DoD solicitations often specified that contractors supply the "exact product" identified in the contract.  Such contracts listed specific manufacturers ("DoD-authorized manufacturers") and specific part numbers.  Pursuant to these contracts, a contractor was obligated to purchase the specified parts from the specified DoD-authorized manufacturers.

   4.  A DoD-approved part was assigned a national stock number ("NSN").  An NSN was a thirteen-digit numeric code identifying all standardized material items of supply in the DoD.  The NSN was specified in all DoD contracts.

   5.  The Defense Finance Accounting Service located in Columbus, Ohio, ("DFAS Columbus") was a DoD agency that paid contractors for goods and services provided to the DoD.  Once a contractor provided the parts, the contractor electronically

submitted to DFAS Columbus an invoice indicating that delivery was made to the DoD, which in turn, caused DFAS Columbus to render payment to the contractor.

## THE CONSPIRACY

6. From on or about September 12, 2001 through in or about March 2005, in the District of New Jersey, and elsewhere, defendant

## ATILLA KAN

did knowingly and willfully conspire and agree with others to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and to transmit and cause to be transmitted by means of wire communications in interstate commerce writings, signs, signals, pictures and sounds for the purpose of executing such scheme and artifice to defraud, contrary to Title 18, United States Code, Section 1343.

## OBJECT OF THE CONSPIRACY

7. It was the principal object of the conspiracy to fraudulently obtain money from the DoD by supplying parts which were not in accordance with contract and military specifications.

## MANNER AND MEANS OF THE CONSPIRACY

8. It was part of the conspiracy that defendant ATILLA KAN, G.D., and others, on behalf of Company 1 (collectively, "the conspirators"), bid on and were awarded numerous DoD contracts for automotive and ground support tractor-trailer parts. The conspirators purchased similar, less expensive parts

("substituted parts") than those specified in the DoD contracts. The conspirators then re-labeled the packaging of the substituted parts to reflect the parts numbers and NSNs specified in the DoD contracts.

9. It was further part of the conspiracy that the conspirators purchased sample parts from DoD-authorized manufacturers and shipped the parts to Company 2 which, in turn, manufactured copies of the parts ("reverse-engineered parts"). Company 1 then fraudulently substituted the reverse-engineered parts for the parts specified in the DoD contracts.

10. It was further part of the conspiracy that the conspirators transmitted by email fraudulent invoices for payment to DFAS Columbus in connection with the substituted parts and reverse-engineered parts supplied to the DoD.

11. It was further part of the conspiracy that on or about November 8, 2004, Company 1 contracted with the DoD to supply fifteen brake drum parts for tow tractors from either of two DoD-authorized manufacturers, under their respective part numbers, specified in the contract. On or about December 27, 2004, the conspirators supplied non-conforming brake drum parts from Company 2 to the DoD. The conspirators re-labeled the packaging of the substituted parts to appear as though the parts were purchased from a DoD-authorized manufacturer specified in the contract.

12. It was further part of the conspiracy that on or about December 8, 2004, the conspirators transmitted by email

from Little Ferry, New Jersey to DFAS Columbus an invoice in the amount of approximately $4,875 in connection with the contract described above in the Paragraph 11.

In violation of Title 18, United States Code, Section 1349.

*Christopher J. Christie*
CHRISTOPHER J. CHRISTIE
United States Attorney

Case 2:07-cr-00745-SDW   Document 1   Filed 09/14/07   Page 6 of 6 PageID: 6